**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
═══════════════════════════════
                               )
CARLOTTA OLIVER, et al.,        )
                               )
              Plaintiffs,       )
                               ) Civil Action No. 10-1443 (EGS)
       v.                       )
                               )
BLACK KNIGHT ASSET MANAGEMENT,  )
LLC, et al.,                    )
                               )
              Defendants.       )
                               )
───────────────────────────────
```

**MEMORANDUM OPINION**

Plaintiffs Carlotta Oliver and Joe Seymour[1] brought an eight-count Amended Complaint alleging breaches of contract, unjust enrichment, retaliation, breach of settlement agreement, and violations of federal securities and employment benefit statutes against their former employer, Black Knight Asset Management, LLC ("Black Knight" or "the Company"), and its controlling officers, Daryl Dennis and Stanley Snow.[2]  In the Amended Complaint, plaintiff Oliver alleges that defendants failed to compensate her in accordance with the terms of her

---

[1]    Mr. Seymour has only brought suit for one count of breach of contract, and thus, the bulk of defendants' motion to dismiss addresses claims specific to Ms. Oliver.

[2]    Defendant Daryl Dennis is Black Knight's President and Chief Executive Officer.  Am. Compl. ¶ 5.  Defendant Stanley Snow is described as an organizer of Black Knight, but there is no further description of his current role in the Company.  *See id.*

employment agreement, terminated her in retaliation for filing a wage and hour claim, and deprived her of benefits under the Company's welfare and benefit plans.

Pending before the Court is defendants' motion to dismiss under Rule 12(b)(1) for lack of jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted on any of the federal claims. In addition, pending before the Court is plaintiffs' motion for partial summary judgment.  Upon consideration of the motions, the responses and the replies thereto, the applicable law, and for the reasons set forth below, the motion to dismiss for lack of jurisdiction is **DENIED**,[3] the motion to dismiss for failure to state a claim is **GRANTED IN PART AND DENIED IN PART**, and the motion for partial summary judgment is **DENIED**.

## I.   BACKGROUND

Plaintiff Oliver was hired by Black Knight as Managing Director, Business Development, in March 2007.  Am. Compl. ¶ 2. Under the terms of Ms. Oliver's employment agreement, Black Knight was required to pay her salary and related entitlements and benefits.  *Id.* ¶ 11.  According to plaintiff, in June 2008, without justification and in violation of her employment

---

[3]     Because the Court finds below that plaintiffs have alleged sufficient facts to state a claim under ERISA on one of their alleged counts, the Court concludes that it has subject-matter jurisdiction over this action under Rule 12(b)(1).

agreement, Black Knight unilaterally and unlawfully attempted to modify her pay structure.  *Id.*  Black Knight ceased paying Ms. Oliver altogether in January 2010.  *Id.* ¶ 12.  Shortly thereafter, she filed a complaint with the District of Columbia Wage and Hour Office.  *Id.* ¶ 13.  In response, Black Knight's CEO, Daryl Dennis, represented to the Wage and Hour Office that Black Knight would pay all compensation owed to Ms. Oliver-- approximately $24,000--the following day.  *Id.*  Instead, and as plaintiff alleges, in retaliation for her wage and hour claim, Black Knight terminated Ms. Oliver on February 26, 2010, a few days short of the date on which, under Black Knight's equity participation plan, her five percent equity interest in the Company was to vest.  *Id.* ¶ 14.  On May 26, 2010, upon learning that Ms. Oliver intended to file the instant action, Black Knight paid Ms. Oliver $18,000.  *Id.* ¶ 15.  To date, defendant has not paid Ms. Oliver the remainder of what it had promised to pay her, nor has it paid her the equity interest to which she alleges she is entitled under the Company's equity participation plan.  *Id.*  Plaintiff also alleges that Black Knight was obligated to pay her six months' severance plus health benefits if she was terminated without cause; it has failed to honor this obligation.  *Id.*

Plaintiff Seymour was hired by Black Knight in April 2008 to direct the Company's 401(k) business development division.

*Id.* ¶ 4.  Under the terms of his employment agreement with Black Knight, he was entitled to be paid a base salary plus a percentage of the assets he developed for Black Knight, as well as his expenses.  *Id.* ¶ 54.  Although Mr. Seymour developed business and incurred expenses in compliance with his agreement, Black Knight has failed to pay him his base salary or his percentage of assets, or to reimburse his expenses, since October 2009.  *Id.* ¶ 55.  On May 26, 2010, upon learning that Mr. Seymour intended to file suit for bad faith refusal to compensate, Black Knight paid Mr. Seymour $7,700, a portion of what he is owed.  *Id.*  Black Knight has failed to pay Mr. Seymour the remainder of what he was owed under his employment agreement.

Plaintiffs filed their initial complaint on August 25, 2010 alleging breaches of contract, retaliation, and unjust enrichment.  On September 16, 2010, defendants filed a motion to dismiss the case under Rule 12(b)(1) due to a lack of complete diversity of citizenship, as several members of the LLC, including defendant Stanley Snow, are, like plaintiff Oliver, citizens of Maryland.  Defs.' Mem. at 1.  Plaintiffs then filed an Amended Complaint on September 30, 2010, adding two claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and one claim under the Investment Advisers Act, 15 U.S.C. § 80b-1 *et seq.*  In response, defendants

4

filed another motion to dismiss, in which they argue that plaintiffs have failed to state claims for any violations of ERISA or the Investment Advisers Act, such that the Court does not have federal question jurisdiction over this case. Defendants also argue that plaintiffs have failed to make any allegations as to defendants Daryl Dennis and Stanley Snow in their individual capacities, and that the case should be dismissed as to them.  On April 19, 2011, plaintiffs filed a motion for partial summary judgment concerning the issue of whether Ms. Oliver has retained her five unit equity interest in the Company.  The motion to dismiss and the motion for partial summary judgment are now ripe for determination by the Court.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that the court has jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The subject-matter jurisdiction of the federal district courts is limited and is set forth generally at 28 U.S.C. §§ 1331 and 1332.  Under those statutes, federal jurisdiction is available only when a "federal question" is presented, or the parties are of diverse citizenship and the amount in controversy exceeds $75,000.  *See*

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).  A party seeking relief in the district court must plead facts that bring the suit within the court's jurisdiction.  *See* Fed. R. Civ. P. 8(a).  Failure to plead such facts warrants dismissal of the action.  *See* Fed. R. Civ. P. 12(h)(3); *see also Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (stating that a suit may be dismissed for lack of jurisdiction where "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction"); *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) ("A complaint may be dismissed on jurisdictional grounds when it 'is patently insubstantial, presenting no federal question suitable for decision.'" (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994))).  If the court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.  *See Arbaugh*, 546 U.S. at 514.

In deciding a Rule 12(b)(1) motion, moreover, the court must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion because subject-matter jurisdiction focuses on the court's power to hear the claim.  *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Thus, to determine whether it has jurisdiction over a claim, the court may consider materials

outside the pleadings where necessary to resolve disputed
jurisdictional facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d
192, 197 (D.C. Cir. 1992); *Alliance for Democracy v. Fed.
Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

### B.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal
sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235,
242 (D.C. Cir. 2002).  A complaint must contain "a short and
plain statement of the claim showing that the pleader is
entitled to relief, in order to give the defendant fair notice
of what the . . . claim is and the grounds upon which it rests."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal
quotation marks and citations omitted).  "'[W]hen ruling on a
defendant's motion to dismiss, a judge must accept as true all
of the factual allegations contained in the complaint[,]'"
*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C.
Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)),
and grant the plaintiff "the benefit of all inferences that can
be derived from the facts alleged." *Kowal v. MCI Commc'ns
Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court need not,
however, "accept inferences drawn by plaintiffs if such
inferences are unsupported by the facts set out in the
complaint.  Nor must the court accept legal conclusions cast in
the form of factual allegations." *Id.*  In addition,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

### C.   Rule 56

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex*, 477 U.S. at 322-23. In determining whether a genuine issue of material facts exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004). The non-moving party's opposition, however, must

consist of more than mere unsupported allegations or denials;

rather, it must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a

genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*,

477 U.S. at 324.  "The mere existence of a scintilla of evidence

in support of the [non-movant]'s position will be insufficient;

there must be evidence on which the jury could reasonably find

for the [non-movant]."  *Anderson*, 477 U.S. at 252.

**III. ANALYSIS**

    **A.   Motion to Dismiss**

        **1.   ERISA Claims**

            **a.   Count II, 29 U.S.C. § 1140**

    Section 510 of ERISA provides, in relevant part, that it

"shall be unlawful for any person to discharge, fine, suspend,

expel, discipline, or discriminate against a participant or

beneficiary . . . for the purpose of interfering with the

attainment of any right to which such participant may become

entitled under the [employee benefit] plan . . . ."  29 U.S.C.

§ 1140.  The enforcement of section 510 is provided for in 29

U.S.C. § 1132, which permits a beneficiary to bring an action:

"(A) to enjoin any act or practice which violates any provision

of this title or the terms of the plan, or (B) to obtain other

appropriate equitable relief (i) to redress such violations or

(ii) to enforce any provisions of this title or the terms of the plan . . . ." *Id.* § 1132(a)(3).

In interpreting ERISA, the D.C. Circuit follows the burden shifting approach employed in Title VII and Age Discrimination in Employment Act ("ADEA") cases. *See May v. Shuttle, Inc.*, 129 F.3d 165, 169-70 (D.C. Cir. 1997); *Lurie v. Mid-Atlantic Permanente Med. Group, P.C.*, 729 F. Supp. 2d 304, 322 (D.D.C. 2010). Under that framework, the plaintiff is required to first make out a *prima facie* case of prohibited employer conduct before the burden shifts to the defendant to articulate a legitimate reason for its action. *May*, 129 F.3d at 169. The burden then shifts back to the plaintiff to prove that the presented reasons are pretextual. *Id.* at 169-70.

In Count II, plaintiffs argue that "[d]efendants purported to terminate Ms. Oliver's rights under the Company's equity participation plan, thereby wrongfully depriving her of the Plan's benefits." Am. Compl. ¶ 19. Defendants concede that the plan at issue is an "employee pension benefit plan" under ERISA,[4] and that Black Knight is subject to ERISA as "an

_____

[4]     The parties refer to three different plans in the pleadings: (i) the equity participation plan, (ii) the 401(k) plan, and (iii) the health care plan. Although plaintiffs refer to all three in the complaint, plaintiffs' ERISA claims are focused on the equity participation plan, under which Ms. Oliver was supposed to receive a five percent equity interest in the Company. While defendants conceded that "the plan at issue" is an ERISA qualified plan (*see* Defs.' Mem. at 2; Defs.' Reply Br.

employer engaged in commerce." Defs.' Mem. at 2; *see also*
Defs.' Reply Br. at 5 & n.2. Defendants argue, however, that
plaintiffs fail to allege what the defendants did to violate
ERISA, other than conclusory allegations such as: "Through the
misconduct set forth in this [C]omplaint, Defendants improperly
caused Oliver to be removed as a participant in the Plans,
improperly removed the benefits to which she [is] entitled, and
improperly terminated her in violation of ERISA." Defs.' Mem.
at 2 (citing Am. Compl. ¶ 28). According to defendants,
plaintiff Oliver failed to allege that her termination was *for
the purpose of* interfering with the attainment of any right
available under the Company's plan; rather, the Amended
Complaint is replete with allegations that plaintiff was
terminated in retaliation for filing a wage and hour claim.
Defs.' Mem. at 5-6.

Defendants' arguments on this point are unpersuasive.
Plaintiffs have alleged that Black Knight fired Ms. Oliver
without cause (i) in retaliation for filing a wage and hour

_____

at 5), defendants also refer numerous times to the fact that
plaintiff Oliver withdrew from the health and benefit plans
before her termination. *See, e.g.*, Defs.' Mem. at 6 ("[D]espite
Oliver's position that she was unlawfully deprived of her rights
under the plan by way of the termination on February 26, 2010,
she had voluntarily stopped participating in the 401(k) Plan in
September of 2009 and was no longer a participant in the health
care plan as of September, 2009 as well."). The defendants
offer nothing to suggest that Ms. Oliver withdrew from or was
not entitled to benefits from the equity participation plan.

claim, and (ii) specifically for the purpose of depriving her of her five percent interest under the equity participation plan, thus depriving her of benefits she was entitled to under ERISA. *See* Am. Compl. ¶¶ 19-21, 28. Plaintiffs state that Black Knight terminated Oliver days before her interest was to vest. *See id.* ¶ 14. Under the lenient pleading standards of Rule 8, these allegations are sufficient to state a claim at the motion to dismiss stage and shift the burden to defendants to articulate a legitimate reason for their action. Defendants have nowhere offered a legitimate reason for their action in order to shift the burden back to plaintiffs. Accordingly, defendants' motion to dismiss Count II of the Amended Complaint is **DENIED**.

### b.    Count III, 29 U.S.C. § 1109

Section 404 of ERISA requires every fiduciary of a plan to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1). A "fiduciary" is defined as a person who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets . . . or has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* § 1002(21)(A). Under section 409 of ERISA,

"[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." *Id.* § 1109(a). Section 502 specifically authorizes a beneficiary to bring an action for a violation of section 409. *See id.* § 1132(a)(2) (a civil action may be brought "by a participant, beneficiary or fiduciary for appropriate relief under section 409").

In Count III, plaintiffs allege that Black Knight and Daryl Dennis breached fiduciary duties to the plaintiffs in violation of ERISA. Am. Compl. ¶ 34. Defendants make three arguments refuting these allegations. First, defendants argue that plaintiffs have failed to allege that the defendants exercised any "authority or discretionary control" respecting the management and/or disposition of any assets under the plan. Defs.' Mem. at 7. Second, defendants argue that plaintiffs fail to state how a fiduciary duty was breached by either defendant. *Id.* According to defendants, the mere fact that plaintiff Oliver was terminated from the Company and deprived of her right to participate in the "plan" does not lead to the conclusion that the defendants breached any fiduciary duty to her. *Id.* at

13

3.   Third, defendants argue that, although plaintiffs have attempted to bring a claim on behalf of the plans, "it is clear that [plaintiff Oliver's] complaint is aimed at recovering on her own behalf, not on behalf of any other purported plan members, as she has raised no allegations that any other plan members were injured in any manner because they were not."  *Id.* at 7.

### i.   Fiduciary Status

Plaintiffs allege that both Black Knight and Daryl Dennis were fiduciaries with respect to the Company's plans.[5]  First, plaintiffs allege that the administrator of a plan is a fiduciary, but no administrator was designated in Black Knight's plan documents.  Am. Compl. ¶ 31.  Where a plan administrator is not designated, the plan sponsor is the administrator.  *See* 29 U.S.C. § 1002(16)(A).  Plaintiffs thus assert that Black Knight, as the sponsor of the plans, was the administrator and thus was a fiduciary with respect to the plans.  Am. Compl. ¶ 31; *see also* 29 U.S.C. § 1002(16)(B) (defining "plan sponsor" as "the employer in the case of an employee benefit plan established or maintained by a single employer").  In addition, plaintiffs allege that defendant Dennis had discretionary authority and responsibility in the administration and management of Black

---

[5]      As discussed *supra* n.4, defendants have conceded that the equity participation plan was an ERISA-qualified plan.

Knight's plans, as well as authority and control respecting the management or disposition of the plans' assets.  Am. Compl. ¶ 32.

In contrast to plaintiffs' claims, however, ERISA defines an administrator as a fiduciary "only to the extent that he acts in such a capacity in relation to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) (citation omitted).  Thus, in every case charging a breach of fiduciary duty under ERISA, the threshold question is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226.  Not all actions taken by an ERISA fiduciary implicate these responsibilities because an ERISA plan administrator "may wear different hats." *Id.* at 225.  For example, it has long been the rule that an employer or plan sponsor does not act in a fiduciary capacity when adopting, modifying or terminating an employee benefit plan. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 101-02 (2007); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996) (applying rule to pension benefit plan); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (applying rule to welfare benefit plan); *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 286 F.3d 598, 599 (D.C. Cir. 2002).  Rather than acting as fiduciaries, employers or plan sponsors amending a plan are "analogous to the settlors of a trust." *Lockheed*, 517

15

U.S. at 890.  This is because such acts are business decisions that do not fall within the ambit of fiduciary duties.

Plaintiffs have not pled sufficient facts to show that Black Knight was acting in its fiduciary capacity as an administrator, rather than an employer or sponsor, when it terminated Ms. Oliver's employment and removed her from the plans.  In addition, plaintiffs have not alleged how defendant Dennis possessed the discretionary authority of a fiduciary with respect to the plans, other than as President and CEO of the Company.  However, even assuming, *arguendo*, that plaintiffs could show that both Black Knight and Dennis were fiduciaries, plaintiffs have failed to allege that defendants breached their fiduciary duties, as described below.

### ii.   Breach of Fiduciary Duties

Plaintiffs assert that defendants improperly caused and/or knowingly participated in (1) Oliver's removal as a participant in the plans; (2) removal of the benefits to which she was entitled; and (3) her termination.  According to plaintiffs, in doing so, defendants breached their fiduciary duties to act "for the purpose of benefiting the plans' participant, *i.e.* Oliver, and to prudently and loyally maintain the plans' assets."  Am. Compl. ¶ 34.  However, as the Supreme Court has held, fiduciary activity under ERISA is limited to discretionary acts of plan

"management" and "administration."  *See Varity Corp. v. Howe*,
516 U.S. 489, 502 (1996); *see also Lockheed*, 517 U.S. at 890.

Under ERISA, fiduciaries have a duty to invest the assets
of a plan prudently and to provide accurate information about
the plan to participants.  For example, "managing or
administering the investment and use of [] trust assets are
deemed fiduciary functions."  *Hartline v. Sheet Metal Workers'
Nat'l Pension Fund*, 134 F. Supp. 2d 1, 13 (D.D.C. 2000), *aff'd*,
286 F.3d 598 (D.C. Cir. 2002) (citation omitted).  A plan
administrator breaches his or her fiduciary duties by, *inter
alia*, deceiving a plan's beneficiaries into withdrawing from
their old plan, forfeiting their benefits, and enrolling in a
new plan in order to save the employer money at the
beneficiaries' expense.  *See Varity*, 516 U.S. at 492-94, 506.
Additionally, the D.C. Circuit has found that a failure to
disclose material information to beneficiaries is a breach of a
fiduciary's duties.  *See Eddy v. Colonial Life Ins. Co. of Am.*,
919 F.2d 747, 750 (D.C. Cir. 1990).

By contrast, the Supreme Court has made clear that acts
such as terminating a fund in its entirety or allowing a plan to
become insolvent do not implicate fiduciary duties because there
*are* no more benefits for the fiduciary to guarantee.  *See Beck*,
551 U.S. at 101-02, 106.  As stated *supra*, Section III.A.1.b.i.,
such actions are business decisions that do not trigger

17

fiduciary obligations.  According to the Supreme Court, "plan participants and beneficiaries must rely primarily (if not exclusively) on state-contract remedies if they do not receive proper payments or are otherwise denied access to their funds." *Id.* at 106.  Termination of employment and removal from a plan are not the types of actions that implicate fiduciary duties and are instead more akin to business decisions not subject to ERISA's fiduciary obligations.  For these reasons, plaintiffs have not stated sufficient facts to support a claim for relief under 29 U.S.C. § 1109.

### iii.  Recovery on Behalf of Individual

Finally, defendants argue that plaintiffs cannot seek to recover individually for an alleged breach of fiduciary duties, but rather must seek to recover on behalf of the plan as a whole.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-42 (1985).  Because plaintiffs have not stated sufficient facts to show that Ms. Oliver seeks to recover on behalf of the plan as a whole, defendants argue that plaintiffs' claim for breach of fiduciary duties should be dismissed.  Defs.' Mem. at 7.  Even assuming, *arguendo*, that plaintiffs could make a claim to recover individually,[6] plaintiffs have not stated

---

[6]     *See, e.g., Variety*, 516 U.S. at 510-13, 515 (holding that in an action for equitable relief, a companion subsection, 29 U.S.C. § 1132(a)(3), can, in fact, provide plaintiffs with a

sufficient facts to show that defendants breached any fiduciary duties.  Accordingly, the motion to dismiss Count III of the Amended Complaint is **GRANTED**, and plaintiffs' claim for breach of fiduciary duties is **DISMISSED**.

### 2.   Investment Advisers Act Claim

Section 206 of the Investment Advisers Act ("IAA") provides, in relevant part, that it is unlawful for any investment adviser to "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative."  15 U.S.C. § 80b-6(4).  Section 215 of the Act provides a private right of action to void or rescind a contract where an investment adviser has engaged in manipulative or unlawful conduct.  15 U.S.C. § 80b-15.  As the Supreme Court has stated, sections 206 and 215 were intended to benefit the *clients* of investment advisers.  *See Transamerica Mortg. Advisors v. Lewis*, 444 U.S. 11, 17 (1979); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 187-88 (1963); *see also Paul S. Mullin & Assocs., Inc. v. Bassett*, 632 F. Supp. 532, 537 (D. Del. 1986) ("Courts have held uniformly that only an investment adviser and its clients (or prospective clients) are proper parties in a private suit under the [IAA]."); *Reserve Mgmt. Corp. v. Anchor*

remedy for a breach of fiduciary duty in their individual capacity, rather than solely on behalf of the plan).

*Daily Income Fund, Inc.*, 459 F. Supp. 597, 608 (S.D.N.Y. 1978) (same).

In Count IV, plaintiffs allege that defendants' unlawful termination of Oliver's participation in the equity participation plan constituted a manipulative or deceptive practice proscribed by the IAA.  According to plaintiffs, defendants engaged in manipulative conduct "when they terminated Ms. Oliver's plan participation on a pretextual basis in retaliation for her exercise of [her] lawful right to file a wage and hour claim."  Am. Compl. ¶ 39.  However, as defendants correctly argue, plaintiffs have not properly stated a claim under the IAA because an employer-employee relationship is not the type of relationship the IAA was intended to protect.  In addition, claims brought under the IAA generally must allege elements similar to those required to prove securities fraud violations,[7] and plaintiffs have not even alleged these basic elements.

Defendants argue that plaintiffs have failed to identify how the "unlawful termination" of plaintiff Oliver is a

---

[7]     *See, e.g.*, *SEC v. Steadman*, 967 F.2d 636, 641-42, 6447 (D.C. Cir. 1992); *SEC v. Wall Street Publ'g Inst., Inc.*, 591 F. Supp. 1070, 1082-84 (D.D.C. 1984); *see also Vernazza v. SEC*, 327 F.3d 851, 858-59 (9th Cir. 2003) (equating the materially false statement or omission requirement in the IAA to that to that required to prove violations of the Securities and Exchange Acts, 15 U.S.C. §§ 77q(a) and 78j(b)).

"manipulative or deceptive practice."  Defs.' Mem. at 3, 9
(citing Am. Compl. ¶ 38).  Defendants here are correct.
Although the Act does not define "manipulative" and "deceptive"
practices, case law provides examples of the types of behavior
that will suffice to establish claims for violations of section
206.  *See, e.g.*, *Wall Street Publ'g Inst.*, 591 F. Supp. at 1081-
87 (involving violations arising out of false and misleading
statements published in defendant's magazine and defendant's
failure to disclose consideration received in connection with
the publication of feature articles).  The Supreme Court has
interpreted the IAA to impose upon the investment adviser "an
affirmative duty of utmost good faith, and full and fair
disclosure of all material facts," as well as an "affirmative
obligation to employ reasonable care to avoid misleading" its
clients.  *Capital Gains Research Bureau*, 375 U.S. at 194
(internal citations and quotation marks omitted).  Plaintiffs'
primary claim here is that Ms. Oliver was wrongfully terminated.
*See* Am. Compl. ¶¶ 38-39.  Plaintiffs have presented no
allegations that defendants committed any fraud or made any
untrue statements and/or omissions of material fact to
plaintiffs or anyone else.  Without more, these allegations do
not suffice to make out a claim of a fraudulent, manipulative,
or deceptive act.[8]

---

[8]     Defendants further argue that plaintiffs fail to

Plaintiffs have failed to state any facts which could be construed as providing the basis for a claim that defendants engaged in any fraudulent, manipulative, or deceptive practice. Accordingly, the motion to dismiss on this claim is **GRANTED**, and plaintiffs' claim under the IAA is **DISMISSED**.

### 3.  Dismissal of Individual Defendants

Defendants argue that plaintiffs have not alleged sufficient facts to support allegations against either Stanley Snow or Daryl Dennis individually, as opposed to in their official capacities as officers of the Company.  Officers of a corporation do not fall within ERISA's definition of an "employer,"[9] and thus officers cannot be held personally liable for a corporation's alleged ERISA violations by virtue of their relationship to the employer alone.[10]  *See Connors v. P & M Coal Co.*, 801 F.2d 1373, 1378 (D.C. Cir. 1986); *see also Int'l Bhd.*

---

allege any facts supporting their position that the Company's private placement offering (which contained the equity participation plan) is an "Investment Advisers Contract," as defined in the Act.  Defs.' Mem. at 9.  Plaintiffs wholly failed to address this issue in their opposition, and therefore, the Court finds that this point has been conceded.

[9]   ERISA defines an employer as one who acts "directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."  29 U.S.C. § 1002(5).

[10]   Even assuming, *arguendo*, that the individual defendants could be held personally liable under the Investment Advisers Act, as discussed *supra* Section III.A.2., a claim under the IAA is wholly inappropriate in this context.

*of Painters & Allied Trades Union v. George A. Kracher, Inc.*, 856 F.2d 1546, 1548-50 (D.C. Cir. 1988) (affirming district court's conclusion that liability for a corporation's delinquent pension contributions does not extend to an individual who is the organization's chief officer and principal shareholder). Once corporate liability has been established under ERISA, "officers may be held personally liable for their corporations' obligations under ERISA if they have acted as the 'alter egos' of their corporations or otherwise met the requirements that justify 'piercing the corporate veil' under traditional common law principles." *Connors*, 801 F.2d at 1378 (citations omitted); *see also Bd. of Trs. v. Northern Steel Corp.*, 657 F. Supp. 2d 155, 160-61 (D.D.C. 2009).

In *Labadie Coal v. Black*, 672 F.2d 92 (D.C. Cir. 1982), the D.C. Circuit identified a two-prong test for deciding when it is appropriate to pierce the corporate veil:  (1) whether there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) if the acts are treated as those of the corporation alone, whether an inequitable result will follow. *See* 672 F.2d at 96.  Under the first prong, the court should consider "the degree to which formalities have been followed to maintain a separate corporate identity." *Id.*  The factors that should weigh in the court's determination include: (1) the

nature of the corporate ownership and control; (2) failure to maintain adequate corporate records; (3) failure to maintain corporate formalities; (4) commingling of funds and corporate assets; (5) diversion of the corporation's funds or assets; and (6) use of the same office or business location by the corporation and the individual shareholders. *Id.* at 97-99.

As to defendant Snow, defendants assert that the Amended Complaint has not made a single factual allegation against Mr. Snow to permit recovery against him individually. Defs.' Mem. at 10. As the D.C. Circuit has held, mere reference to an individual's role as an officer in a company is insufficient to establish liability. *See Int'l Bhd. of Painters & Allied Trades Union*, 856 F.2d at 1548. Indeed, the Amended Complaint contains only one sentence related to Mr. Snow: "Defendant Stanley Snow is an organizer of Black Knight." Am. Compl. ¶ 5.[11]  Plaintiffs

---

[11]     Plaintiffs attempt to incorporate additional facts into their opposition as to Snow. *See* Pls.' Opp. at 2 ("Black Knight, through defendants Snow and Dennis, in June 2008 unilaterally and unlawfully attempted to modify Ms. Oliver's pay structure."); *id.* at 3 ("Black Knight, at the behest of Stan Snow and Daryl Dennis, wrongfully terminated Ms. Oliver on February 26, 2010."); *id.* ("Stan Snow caused Black Knight to pay Ms. Oliver $18,000.00 . . . ."); *id.* at 8 ("On information and belief, the actions taken by defendants have been taken at the express direction of defendant Snow. Defendant Snow has exerted dominion and control over Black Knight due to its financial struggles."). Because plaintiffs have not sought to amend their complaint, these facts cannot be read into the complaint when raised for the first time in the opposition. *See Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 15 (D.D.C. 2009) ("[S]uppositions in an opposition to a motion to dismiss are no

have not alleged that Snow did anything either on behalf of the
Company or in his individual capacity.  Without more, the
complaint does not give defendant Snow notice of the claims
against him and the grounds upon which they rest.  For this
reason, the motion to dismiss as to defendant Snow is **GRANTED**.

Defendants similarly argue that plaintiffs have not pled
sufficient facts in Counts I-IV to recover against defendant
Dennis individually.  With respect to Mr. Dennis, plaintiffs
allege that Dennis occupied the role of President and CEO of
Black Knight; that he represented to the D.C. Wage and Hour
Office that Black Knight would pay Ms. Oliver the compensation
owed to her and then wrongfully terminated her instead; that he
had the responsibilities and obligations of Black Knight as
administrator of the Company's equity participation and health
and benefit plans; and that he offered in writing to settle Ms.
Oliver's claim and then refused to honor the terms of the draft
settlement agreement.  *See* Am. Compl. ¶¶ 5, 13-14, 32, 50-51.
Plaintiffs have failed, however, to allege that Dennis did
anything outside of his role as President and CEO of the Company
that would permit him to be held personally liable under the
veil piercing or alter-ego theories discussed above.

---

substitute for the specific factual allegations plaintiff must
make in her complaint.").

25

Accordingly, the motion to dismiss as to defendant Dennis is
**GRANTED**.

### B.    Motion for Partial Summary Judgment

In the motion for partial summary judgment, plaintiffs seek
an order entering judgment in Ms. Oliver's favor on the issue of
whether she retained her equity units in Black Knight.
According to plaintiffs, the equity units were provided for
under the terms of Ms. Oliver's employment and Black Knight's
Offering Memorandum, and, under the terms of the employment
agreement, any forfeiture of the equity units was required to be
in writing.  *See* Pls.' Mot. Summ. J. at 1-4.  Because no writing
evidencing forfeiture of Ms. Oliver's equity exists, plaintiffs
argue that they are entitled to summary judgment on this issue.
Defendants argue that the employment agreement contains no
requirement that the Company obtain a document from plaintiff
evidencing a forfeiture of her interests, but rather, that the
agreement operates to divest the equity ownership *automatically*
when an employee is terminated prior to her third anniversary of
employment with the Company.  *See* Defs.' Opp. at 3-5.
Defendants further argue that genuine issues of material fact
exist at this stage of the litigation, in which minimal
discovery has been taken.  *See id.* at 1-2, 7.  Because the Court
is persuaded that genuine issues of material fact exist that

preclude summary judgment at this time, plaintiffs' motion for partial summary judgment is **DENIED** without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs have failed to state a claim for breach of fiduciary duties under ERISA, 29 U.S.C. § 1109 (Count III), or for relief under the IAA, 15 U.S.C. § 80b-15 (Count IV).  The Court additionally concludes that plaintiffs have failed to state claims against either Stanley Snow or Daryl Dennis in their individual capacities.  However, the Court concludes that plaintiffs have alleged sufficient facts at this stage to make out a claim for relief under section 510 of ERISA, 29 U.S.C. § 1140 (Count II).  Accordingly, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  In addition, because genuine issues of material fact exist that preclude summary judgment at this time, plaintiffs' motion for partial summary judgment is **DENIED** without prejudice.  A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:     **EMMET G. SULLIVAN**
            **United States District Judge**
            **September 26, 2011**